**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**


MARATHON OIL PERMIAN, LLC,

      Plaintiff,

v.                                                    No. 1:18-cv-00548-JCH-SCY

OZARK ROYALTY COMPANY, LLC,
and TAP ROCK RESOURCES, LLC,

      Defendants.


## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant Tap Rock Resources, LLC's (Tap Rock)
Motion to Dismiss [ECF No. 6]; Plaintiff Marathon Oil Permian, LLC's (Marathon) Motion for
Partial Summary Judgment on Quiet Title Claim [ECF No. 21]; and Defendant Ozark Royalty
Company, LLC's (Ozark) Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF
No. 28]. This dispute over a roughly 40-acre mineral estate lease began with a notary's error in
notarizing the wrong signature on a lease conveyance. In 2016, Defendant Ozark conveyed to
Black Mountain Oil & Gas LLC (Black Mountain) a lease with the defective notarization. When
Black Mountain's affiliate company tried entering the lease into the records, the county clerk
rejected it, thereby leaving it unrecorded. A few months later, Black Mountain conveyed the lease
to Plaintiff Marathon, which Marathon duly recorded. Meanwhile Ozark, believing that the
defective notarization invalidated the earlier Ozark/Black Mountain conveyance, resold the
mineral lease to Defendant Tap Rock, who paid valuable consideration and claims to have no
knowledge of the transactions from Ozark to Black Mountain and Black Mountain to Marathon.
Marathon moved for partial summary judgment, arguing that its title to the mineral lease is superior
to Tap Rock's as a matter of law. Tap Rock and Ozark moved to dismiss Marathon's complaint

for failure to state a claim upon which relief can be granted. The Court, having considered the briefs, pleadings, and relevant law, rules as explained herein.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

The interest in controversy is a mineral estate in 40-acres, more or less, in SE/4 SE/4 of Section 34, Township 24 South, Range 34 East, Lea Country, New Mexico. Ozark obtained the mineral estate lease from Cynthia Herren-Sweat on November 16, 2016. A month after Ozark acquired the lease, in December 2016, Ozark assigned the lease to Black Mountain for valuable consideration. The parties made the lease retroactive to November 16, 2016. An Ozark official, R. Brian Coker, signed the Ozark/Black Mountain conveyance on Ozark's behalf. However, in the certificate of acknowledgment, a notary public notarized his own name when he should have notarized that of the signing party, Mr. Coker. An affiliate company of Black Mountain tried entering the Ozark/Black Mountain lease with the defective acknowledgment into the Lea County records. On March 22, 2017, however, the county clerk returned the Ozark/Black Mountain lease because of the notary error.

On June 1, 2017, Black Mountain conveyed the lease to Marathon. Under this conveyance and an accompanying purchase and sale agreement, Black Mountain transferred, among other things, "its right, title and interest" in the lease to Marathon. Under the agreement, Marathon became Black Mountain's successor-in-interest. Black Mountain and Marathon made the lease retroactive to March 1, 2017. Marathon duly recorded the Black Mountain/Marathon assignment with the Lea County clerk on June 8, 2017 without any problems.

---

[1] The following facts, taken as true, are from Marathon's complaint. *See* Pl.'s Compl., ECF No. 1.

Both Marathon and Black Mountain pressed Ozark to fix the notary's defective acknowledgment on the Ozark/Black Mountain assignment and to re-execute it for filing. Ozark refused. It then later took the position that the notary's defective acknowledgment invalidated the Ozark/Black Mountain assignment altogether. So on November 22, 2017, roughly five months after Marathon recorded, Ozark conveyed the lease to Tap Rock, which Tap Rock recorded in December 2017 in the Lea County records. Marathon "notified Tap Rock that Ozark[2] assigned the Lease to Marathon prior to Tap Rock's purported acquisition of the Lease from Ozark, and that Tap Rock had notice of the Ozark-Black Mountain Assignment before it executed the Tap Rock Assignment." Pl.'s Compl. ¶ 21. Tap Rock disagreed with Marathon, asserting that its interest in the lease was valid.

Invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332, Marathon filed a four-count complaint on June 13, 2018. Marathon asserted a single count of quiet title against Tap Rock, contending that its interest in the lease was superior to that of Tap Rock's (Count III). The remaining three counts were all asserted against Ozark alone: a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57 that the Ozark/Black Mountain assignment was a valid assignment (Count I); slander of title (Count II); and, alternatively, in the event the Court holds that title rests with Tap Rock, breach of contract against Ozark for failing to properly transfer its interest in the leasehold to Black Mountain, and thereby to Marathon as its successor-in-interest (Count IV).

Roughly a month after filing its complaint and before discovery commenced, Marathon moved for partial summary judgment against Tap Rock on the quiet title claim, contending that no discovery is needed to prove, to a legal certainty, that its title in the mineral estate is superior. In

---

[2] Presumably Marathon means that Black Mountain, not Ozark, assigned the lease to Marathon.

the course of litigating the pending dispositive motions, Marathon made the additional request for leave to amend its complaint under Fed. R. Civ. P. 15 and Tap Rock moved the Court to defer or deny ruling on Marathon's motion for partial summary judgment under Fed. R. Civ. P. 54.

## II. MARATHON'S MOTION FOR PARTIAL SUMMARY JUDGMENT[3]

Attached to Marathon's motion for partial summary judgment against Tap Rock for quiet title were copies of the ownership history in Marathon's chain of title – Ms. Herren-Sweat's conveyance to Ozark; Ozark's conveyance to Black Mountain; Black Mountain's conveyance to Marathon. The recorded lease between Ms. Herren-Sweat to Ozark contained a stamp stating, "Please Return Recorded Originals to: Black Mountain." Ex. 1 to Pl.'s Mot. for Partial Summ. J., ECF No. 21-1. According to Marathon's timeline of events, Ozark immediately assigned the mineral lease it obtained from Ms. Herren-Sweat to Black Mountain. Black Mountain was therefore Ozark's successor-in-interest, and that is why the stamp had the "return originals" with Black Mountain's name on it. This stamp appeared in documents in Tap Rock's chain of title, Marathon says. Seeing the stamp, Tap Rock should have been alerted that Black Mountain had an interest in the lease. Had Tap Rock located Black Mountain's name in the grantor index, it would have seen the conveyance to Marathon.

In its opposition brief, Tap Rock moved the Court under Fed. R. Civ. P. 56(d) for a deferral or denial of Marathon's motion to obtain discovery needed to justify its opposition to Marathon's motion. *See id.* at 56(d)(1)-(2) (permitting a district court to defer ruling on a motion for summary judgment or to allow a nonmovant time to obtain discovery if the nonmovant shows that essential facts are unavailable to it.) Tap Rock included an affidavit from Tap Rock's legal counsel that Tap

---

[3] Marathon's material facts in its partial motion for summary judgment are identical to those presented in its complaint. Where Tap Rock disputes Marathon's material facts, it does so on the ground that without discovery it cannot meaningfully justify its opposition.

Rock cannot meaningfully oppose Marathon's motion for partial summary judgment because discovery had not opened and because Tap Rock had no opportunity to verify the existence or validity of unrecorded transactions in Marathon's chain of title, specifically the conveyance from Ozark to Black Mountain.

## A. STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248–50. An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013).

If the moving party bears the burden of proof on its claims at trial, it must first affirmatively show that, on all the essential elements of his claims, no reasonable jury could find for the nonmovant. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J. dissenting). "Summary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999)). "In other words, the evidence in the movant's favor must be so powerful that no

reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Leone*, 810 F.3d at 1153 (citation and quotations omitted).

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The non-movant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d, 664, 671 (10th Cir. 1998) (internal quotation marks omitted). The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it[.]" *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

## B.     DISCUSSION

Because this is a diversity case, the Court applies New Mexico's substantive quiet title law. *See Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). New Mexico Statute Annotated § 42-6-1 authorizes "[a]n action to determine and quiet the title of real property … by anyone having or claiming an interest therein … against any person or persons, claiming title thereto …." In New Mexico, all writings affecting the title to real estate must be recorded in the proper county clerk's office where the real property is situated. *See Amethyst Land Co. v. Terhune*, 2014-NMSC-015, ¶ 10, 326 P.3d 12, 15 (citing N.M. Stat. Ann. § 14–9–1.). "Instruments are required to be recorded, so that notice of the rights of the parties

thereunder may be given to all the world." *Smith & Ricker v. Hill Bros.*, 1913-NMSC-004, ¶ 37, 17 N.M. 415, 134 P. 243, 247. Notarization, or "acknowledgment," of such instruments is a prerequisite to recordation. *See* N.M. Stat. Ann. § 14-8-4 ("[a]ny instrument of writing not duly acknowledged may not be filed and recorded or considered of record."); *see also New Mexico Properties, Inc. v. Lennox Industries, Inc.*, 1980–NMSC–087, ¶ 7, 95 N.M. 64, 618 P.2d 1228 ("[a]bsent a valid acknowledgment, an instrument may not be treated as a recorded instrument.").

New Mexico, like every State, has a recording statute that protects a purchaser for value who lack notice of prior unrecorded interests. *See City of Rio Rancho v. Amrep Sw. Inc.,* 2011-NMSC-037, ¶ 39, 150 N.M. 428, 260 P.3d 414, 426 ("[t]he recording requirement seeks to protect [good faith] purchasers against loss from adverse claims of interest that are not disclosed by any public record and not ascertainable by due diligence.") (internal quotation marks and citation omitted). Such a purchaser is known as a bona fide purchaser for value. Her interest in the property can be preserved if she pays valuable consideration and is without notice of any prior unrecorded real estate interests. The relevant statute providing protection to bona fide purchasers states that: "No … instrument in writing not recorded … shall affect the title or rights to, in any real estate, of any purchaser, … without knowledge of the existence of such unrecorded instruments." N.M. Stat. Ann. § 14-9-3. The statute is considered a "notice" recording statute. *See Angle v. Slayton*, 1985-NMSC-032, ¶ 8, 102 N.M. 521, 697 P.2d 940.

There are two kinds of notice a purchaser may have with respect to a prior record claim: actual and constructive. Constructive notice refers to notice that the law deems a purchaser has regardless of actual knowledge. *See Grammer v. New Mexico Credit Corp.*, 1957-NMSC-018, ¶ 17, 62 N.M. 243, 248, 308 P.2d 573, 576. Moreover, constructive notice takes two forms. First, a properly recorded instrument can impart constructive notice. *See Romero v. Sanchez*, 1971-

NMSC-129, ¶ 23, 83 N.M. 358, 361, 492 P.2d 140, 143; *Amrep Sw. Inc.*, 2011-NMSC-037 at ¶ 38 (stating that "[t]he inevitable consequence" of the land recording requirement of N.M. Stat. Ann. § 14-9-1 is that a recorded instrument imparts "constructive knowledge."). That is because a properly recorded instrument "shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording." N.M. Stat. Ann. § 14-9-2. "By judicial interpretation, 'all the world' has been limited to mean those persons who are bound to search the record, and it is to such persons only that the law imputes constructive notice." *Angle*, 1985-NMSC-032 at ¶ 7. The law imputes constructive notice to subsequent purchasers "of all recorded documents within the purchaser's chain of title." *Amrep Sw. Inc.*, 2011-NMSC-037 at ¶ 43.

A second form of constructive notice exists when circumstances would cause a reasonable person to make inquiry into the possible existence of an adverse interest in the property. *See id.* at ¶ 26; *see also Grammer*, 1957-NMSC-018 at ¶ 17. The latter is known as the inquiry rule. *See Amrep Sw. Inc.,* 2011-NMSC-037 at ¶ 26. Under that rule, "[o]nce a prospective purchaser obtains knowledge of facts that trigger a duty to inquire about the title, that purchaser must perform a reasonably diligent investigation – one that would lead to the knowledge of the requisite facts by the exercise of ordinary diligence and understanding." *Id.* It follows that "[o]ne who intentionally remains ignorant is chargeable in law with knowledge." *State ex rel. State Tax Comm'n v. Garcia*, 1967-NMSC-098, ¶ 9, 77 N.M. 703, 709, 427 P.2d 230, 235.

Consequently, a purchaser of property will want to search the records to make sure that there are no adverse prior record claims. In New Mexico, she does so by examining the grantor-grantee indices maintained by the county recorder. *See* N.M. Stat. Ann. § 14-10-3. In the grantor index all instruments are indexed alphabetically and chronologically under the grantor's last name. In the grantee index all instruments are indexed under the grantee's last name. *See* 1 Patton and

Palomar on Land Titles § 67 (3d ed.). "A searcher may begin with the name of the present owner and work backward under the … grantee index until finding the name of that party as grantee in a deed for the land involved … Another method of search is to run the grantor indices, running the name of an early owner until the deed from him is found, then running the name of party to whom he conveyed and so on down to the date of search[.]" *Id.*

In its partial motion for summary judgment, Marathon presents two theories for why Tap Rock had constructive notice of the Black Mountain/Marathon assignment: (1) since that assignment was properly recorded in the Lea Country records, it imparted record notice as a matter of law to Tap Rock; and (2) a stamp bearing Black Mountain's name appearing on the recorded conveyance between Ozark and Ms. Herren-Sweat put Tap Rock on notice to further inquire about the stamp. Had it done so, Tap Rock would have discovered Black Mountain's conveyance of the lease to Marathon.

The Court analyzes each theory.

> **i. Did the Recorded Black Mountain/Marathon Conveyance Impart Constructive Notice to Tap Rock?**

Marathon and Tap Rock dispute whether the New Mexico law imposes a "chain of title" requirement that a recorded deed can impart constructive notice to a bona fide purchaser only if it is a link in the purchaser's chain of title searchable in the records. The answer is that the New Mexico Supreme Court has laid down such a rule: a purchaser is charged with constructive notice "of all recorded documents within the purchaser's chain of title." *Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 43. Therefore, the lease from Black Mountain to Marathon, though recorded, did not impart constructive notice to Tap Rock because it was not a recorded link in Tap Rock's chain of title from Ozark. The conveyance to Black Mountain was defectively notarized, so it was not entitled to be filed of record under N.M. Stat. Ann. § 14-8-4. Not being recorded, the conveyance to

Marathon would not have been picked by Tap Rock in a title search. If Tap Rock had located Ozark's name in the grantor index and ran it forward, it would not have shown that Ozark parted record to Black Mountain. From Tap Rock's view, Ozark was the record owner of the lease from March 2017 until December 2017, when Tap Rock recorded its interest. Lying outside of Tap Rock's chain of title, Marathon's recorded lease does not impart constructive notice to, and is not entitled to priority over, Tap Rock's recordation of its own interest on the sole ground that Marathon earlier recorded.

Marathon's reliance on the New Mexico Supreme Court's case *Angle v. Slayton* for the proposition that the New Mexico Supreme Court rejected a chain of title rule is unavailing. There, the parties' common grantor, Shell Oil Company, conveyed deep and shallow rights of an oil well lease appearing on two different records. *See Angle*, 1985-NMSC-032, ¶ 8. The plaintiff first recorded her interest in the deep rights on one record. *Id.* The defendants later acquired the shallow rights, but confined their title search to a record specific to oil and gas leases where the ownership history for the shallow rights appeared. *Id.* Rejecting the defendants' claim for quiet title to the entire estate, the court held that the plaintiff's earlier recording of her interest in the deep rights imparted constructive notice that Shell parted record of those rights. *Id.* at ¶ 9. *Angle* is simply irrelevant to this dispute. No broken links in the defendants' chain of title were even at issue in that case. Here, the essential link between Ozark and Black Mountain was unrecorded, and Tap Rock is not charged with constructive notice of records not appearing in Tap Rock's chain of title.

### ii. Did the Stamp Impart Constructive Notice to Tap Rock?

As noted earlier, Marathon contends that a stamp bearing Black Mountain's name appearing on the recorded conveyance between Ozark and Ms. Herren-Sweat put Tap Rock on inquiry to follow-up about the stamp. The stamp was an instruction to the Lea County clerk stating:

"Please Return Recorded Originals to: Black Mountain." It then listed Black Mountain's Fort Worth, Texas address. According to Marathon, this stamp should have put Tap Rock on inquiry whether Black Mountain, who was by then Ozark's purported success-in-interest, had an interest in the lease. Upon seeing the stamp, Tap Rock should have done a title search of Black Mountain's name in the grantor index. Had it done so, Tap Rock would have found the recorded conveyance from Black Mountain to Marathon.

In other words, Marathon argues for an application of the "inquiry rule," which would prevent Tap Rock from being an innocent bona fide purchaser if Tap Rock was "aware of facts that should have put [it] to an inquiry, which if pursued with due diligence, would have led to a knowledge of the infirmities appearing upon the face of the instrument involved in the transaction." *Amrep Sw. Inc.*, 2011-NMSC-037 at ¶ 26. "Any description, recital of fact, reference to other documents, puts the purchaser upon an inquiry. He is bound to follow up this inquiry, step by step, from one discovery to another, from one instrument to another, until the whole series of title deeds is exhausted, and a complete knowledge of all matters referred to therein is obtained." *United States v. San Pedro & Canon Del Agua Co.*, 1888-NMSC-009, ¶ 95, 4 N.M. 405, 17 P. 337, 401.

To better contextualize the inquiry rule, the Court recounts some cases from New Mexico's courts expounding the rule. In *Taylor v. Hanchett Oil Co.,* 1933-NMSC-099, 37 N.M. 606, 27 P.2d 59, Hanchett Oil Company obtained a deed mentioning an unrecorded escrow agreement and mortgages associated with G.L. Haas, the plaintiffs' successor. *Id*. at ¶ 6. The deed to Hanchett said that it was subject to "rights of redemption," and "certain mortgages made by parties … to G.L. Haas" or "any agreements … in connection with said mortgages." *Id.* As the court explained, the reference to the mortgages and escrow agreement "should have immediately caused [Hanchett] to pause, reflect, and inquire what rights of redemption existed by virtue of certain mortgages made

by the parties … to G.L. Haas," and whether those rights of redemption were redeemed such that title passed. *Id*. at ¶ 15. The court therefore held that Hanchett had constructive notice of the unrecorded outstanding mortgages. *Id.* at ¶ 16. In other words, *Hanchett Oil Co.* teaches that even references or recitals to an adverse interest may afford constructive notice to a subsequent purchaser.

In *Camino Real Enterprises, Inc. v. Ortega*, 1988-NMSC-061, 107 N.M. 387, 758 P.2d 801 the New Mexico Supreme Court readdressed somewhat similar issues raised in *Hanchett Oil Co.* – namely, whether an improvement agreement appearing in the Ortegas' chain of title, though unrecorded, imparted constructive notice to them. The improvement agreement called for reimbursement payments by subdivision residents to the subdivision's owner, Roadrunner Enterprises, Inc., for improvements costs to the subdivision. *Id.* at ¶ 1. That original deal was struck between Roadrunner and Patton, a grantor in the Ortegas' chain of title. *Id*. But Roadrunner and Patton never recorded the agreement. *Id*. However, when Roadrunner later sold the subdivision to plaintiff Camino Real Enterprises, Inc., the agreement was attached to the contract of sale and recorded. *Id.* Because the improvement agreement did not appear in the Ortegas' deed of conveyance, they argued that the agreement was not in their chain of title and therefore not bound by it. *Id.* at ¶ 3. The New Mexico Supreme Court disagreed. *Id*. Because the improvement agreement was referred to and attached to the recorded contract of sale from Roadrunner to Camino Real (and because Camino Real and the Ortegas were bound by the Roadrunner/Patton agreement) the Ortegas had constructive notice of the agreement as a matter of law. *Id*. A prominent treatise has cited *Camino Real Enterprises, Inc*., for the proposition that "[a] purchaser is charged with constructive notice of anything appearing in any part of the deeds or instruments forming the chain of title." 3 Patton and Palomar on Land Titles § 607 (3d ed.).

Here, these precedents demonstrate that the stamp did not impart constructive notice to Tap Rock. The "return originals" stamp bearing Black Mountain's name does not qualify as a "description, recital of fact, [or] reference to other documents," *San Pedro & Canon Del Agua Co.*, 1888-NMSC-009 at ¶ 95, that put Tap Rock on inquiry. There is no indication in the Ozark/Ms. Herren-Sweat conveyance that Black Mountain had any relationship to that transaction. Black Mountain's interest is nowhere mentioned on the lease. The public records did not show a deed to the property to Black Mountain. *See Mabie-Lowrey Hardware Co. v. Ross*, 1920-NMSC-026, ¶ 3, 26 N.M. 51, 189 P. 42, 43 (defendant had no notice of an unrecorded deed from parties' grantor where record title was in the grantor at the time of defendant's purchase.) Marathon argues that a minimally burdensome title search of Black Mountain's name in the grantor index would have shown the conveyance to Marathon. But under the circumstances, the stamp imposed no legal duty on Tap Rock to investigate Black Mountain's interest. Marathon is not entitled to summary judgment against Tap Rock on its quiet title claim and the Court therefore denies its partial motion for summary judgment.

## III.    TAP ROCK'S MOTION TO DISMISS

The Court next analyzes Marathon's remaining allegations in its complaint against Tap Rock concerning Tap Rock's possible notice of Marathon's prior interest. Marathon contends that "[u]pon information and belief, Tap Rock had actual notice" of the Marathon conveyance. Pl.'s Compl. at ¶ 41. Marathon also alleges that by the time Tap Rock secured its interest, Marathon "notified Tap Rock that Ozark assigned the lease to Marathon prior to Tap Rock's purported acquisition of the Lease from Ozark, and that Tap Rock had notice of the Ozark/Black Mountain Assignment before it executed the Tap Rock Assignment." *Id.* at ¶ 21.

Tap Rock moves to dismiss Marathon's complaint. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Determining whether a complaint contains well-pleaded facts sufficient to state a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Though a complaint need not provide "detailed factual allegations," it must give just enough factual detail to provide "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quotations and citations omitted). "If, in the end, a plaintiff's well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim." *Id.* (quotations and citations omitted).

The Court grants Tap Rock's motion to dismiss. Even taking as true Marathon's allegation that Tap Rock had "actual notice" of Marathon's interest, Marathon pleads no facts substantiating that claim (not even the fact concerning the stamp). The Court is unable to perceive what Tap Rock personally, actually knew demonstrating that it was aware of a conflicting interest in the lease. The only substantive allegation tying Tap Rock's awareness to Marathon's interest is Marathon's allegation Marathon personally told Tap Rock about the Black Mountain/Marathon conveyance. However, Marathon alerted Tap Rock to its interest after, not before, Tap Rock secured its own interest.

At the end of its opposition brief to Tap Rock's motion to dismiss, Marathon requests the Court's leave to amend its complaint, which Tap Rock opposes. Fed. R. Civ. P. 15(a)(2) provides

for liberal amendment of pleadings, instructing courts to "freely give leave" to amend "when justice so requires." "The grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Minter vs. Prime Equipment Co.*, 451 F.3d. 1196, 1204 (10th Cir. 2006). Subsection 15(a)(2) provides that after a party has amended a pleading once as a matter of course or the time for amendments of that type has expired, a party may amend only by obtaining leave of court or if the adverse party consents. Leave should be "freely give[n] … when justice so requires," but leave need not be granted on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, … or futility of amendment." *Duncan v. Manager, Dept. of Safety, City and Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

Marathon did not attach its proposed amended complaint in violation of D.N.M.LR-Civ. 15.1, leaving the Court without necessary law, facts, and arguments needed to meaningfully analyze whether its request should be granted. Nor did Marathon present any specific analysis of why leave should be given, saying only in general terms that an amendment would not be futile or prejudice Tap Rock. Lacking Marathon's proposed amended complaint and a meaningful discussion from Marathon as to why leave should be granted, the Court denies Marathon's request for leave to amend its complaint.

## IV.    OZARK'S MOTION TO DISMISS

Marathon asserted three counts against Ozark. Ozark moved to dismiss only two of them, slander of title (Count II) and breach of contract (Count IV). Marathon's breach of contract claim against Ozark is pleaded strictly in the alternative: only if the Court quieted title to the mineral lease in Tap Rock, then Ozark is liable on a theory of breach of contract for the notarization fiasco that led to title ultimately not transferring to Marathon, and Ozark's later conveyance to Tap Rock. Ozark did not move to dismiss Count I, Marathon's request for a declaratory judgment that the

Ozark/Black Mountain conveyance is valid. Ozark therefore has at this stage conceded that the Ozark/Black Mountain conveyance was valid.

A.  **DISCUSSION**

i.  **Slander of Title (Count II)**

As noted earlier, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678. "Slander of title is a form of the tort of injurious falsehood that protects a person's property interest against words or conduct which bring or tend to bring validity of that interest into question." 53 C.J.S. Libel and Slander; Injurious Falsehood § 310. "The essence of the cause of action is the making of an unfounded claim concerning ownership in the security interest in the property of another, resulting in financial loss to the rightful owner." *Id*. Under New Mexico law, the tort occurs "when [1] one who, without the privilege to do so, [2] wilfully [sic] records or publishes matter [3] which is untrue and disparaging to another's property rights in land, as would lead a reasonable [person] to foresee that the conduct of a third purchaser might be determined thereby." *Den-Gar Enterprises v. Romero*, 1980-NMCA-021, ¶ 16, 94 N.M. 425, 430, 611 P.2d 1119, 1124 (citations omitted). New Mexico law imposes the additional two requirements that a defendant must have acted with "malice," *see id.*, and a slander of title plaintiff also must specifically plead special damages. *See Garver v. Pub. Serv. Co. of N.M.*, 1966-NMSC-261, ¶ 41, 77 N.M. 262, 272, 421 P.2d 788, 795.

In its complaint, Marathon alleges that Ozark "willfully published and/or recorded statements claiming it continued to have property rights in" the mineral lease after conveying it to Black Mountain, and that Ozark's "untrue" statements "disparaged Marathon's property right[s]." Pl.'s Compl. at ¶¶ 20-31. Ozark's statements were made maliciously, without privilege, and

"would lead a reasonable person to foresee that the conduct of a third purchaser might be determined by the statements." *See id.* at ¶¶ 32-33. In response, Ozark contends that Marathon's claim of slander title fails as a matter of law because Tap Rock, not Ozark, is the proper defendant for a slander of title action. Ozark cites the case *Vill. of Wagon Mound v. Mora Tr.*, 2003-NMCA-035, ¶ 74, 133 N.M. 373, 62 P.3d 1255 for the proposition that "a proper defendant in a slander of title action is an individual who records a competing interest in the property at issue." Ozark's Mot. to Dismiss at 3. Thus, Ozark contends that it is only "[t]he act of recording a competing interest in real property, not the act of granting the competing interest, … that gives rise to a slander of title claim." *Id.* Under Ozark's theory, because Tap Rock clouded Marathon's title by recording, Tap Rock is the proper defendant. Marathon replies that Ozark is the proper defendant because Ozark disparaged Marathon's title in the lease by casting doubt on Black Mountain's (and thereby Marathon's) title by representing to Tap Rock that it had any interest to impart.

Marathon's complaint establishes against Ozark a claim for slander of title in all respects. First, in tort law privilege refers to protected communications that are published in a reasonable manner and for a proper purpose. *See Gregory Rockhouse Ranch, L.L.C. v. Glenn's Water Well Serv., Inc.*, 2008-NMCA-101, ¶ 26, 144 N.M. 690, 697, 191 P.3d 548, 555, *abrogated on other grounds by Helena Chem. Co. v. Uribe*, 2012-NMSC-021, ¶ 26, 281 P.3d 237. No privilege afforded Ozark immunity to represent to Tap Rock that it had title to impart, nor does Ozark even argue that its representations to Tap Rock were privileged.

Second, Marathon's complaint plausibly alleges that Ozark published to a third-party, Tap Rock, that it had an interest in the mineral lease even though it knew it had previously conveyed its interest in the lease to Black Mountain. Contrary to Ozark's assertion that only the recording of an instrument is publication, New Mexico law recognizes that slander of title can be predicated on

oral or written disparagements. *See Jemez Properties, Inc. v. Lucero*, 1979-NMCA-162, ¶ 18, 94 N.M. 181, 186, 608 P.2d 157, 162. Entering an adverse claim on the record alone is simply a not a requirement for a slander of title suit.

Third, Marathon's complaint pleads that Ozark's representations to Tap Rock were "untrue." Indeed, Ozark conceded that the conveyance to Black Mountain, though unrecorded, was valid. Being valid, Ozark's alleged publication to Tap Rock that it had any interest to convey was necessarily untruthful. Having cast doubt on Marathon's title to the mineral lease, Ozark disparaged that property interest.

Fourth, Marathon's complaint states that Ozark maliciously published its statements concerning title to the lease. In *Den-Gar Enterprises*, 1980-NMCA-021 at ¶ 16, the defendant's recordation of a deed asserting title to plaintiffs' land was substantial evidence of slander, including malice. Here, Ozark recorded no deed and as explained above Ozark did not have to record a competing deed to be held liable for slander of title. It is enough that Ozark asserted title to the leasehold by representing to Tap Rock that it had title to convey. The element of malice is satisfied.

Finally, it appears that Marathon's complaint properly requested relief for special damages. Special damages "must be pleaded as well as proved in a suit for slander of title." *Jemez Properties, Inc.*, 1979-NMCA-162 at ¶ 18. Attorney's fees spent to clear a disparaged title are recoverable as special damages in a slander of title action. *See Den-Gar Enterprises,* 1980-NMCA-021 at ¶ 17. Marathon's complaint did not plead an exact figure of special damages. However, the complaint does state that Marathon "is entitled to attorneys' fees in this action as damages for Ozark's slander of title, along with punitive damages," Pl.'s Compl, ¶ 35 at 6, and thus attorneys' fees were properly pleaded as special damages.

The Court denies Ozark's motion to dismiss Marathon's claim for slander of title.

### ii. Breach of Contract (Count IV)

In its complaint, Marathon says that the Ozark to Black Mountain conveyance constituted a valid and binding contract under which Ozark was to transfer its interest in the lease to Black Mountain. The complaint alleges that Black Mountain and Marathon, in turn, "executed an Assignment, Bill of Sale, Deed, and Conveyance … and related Purchase and Sale Agreement," under which Black Mountain "transferred, *inter alia*, its right, title, and interest in the Lease to Marathon." Pl.'s Compl., ¶ 12, at 4. The complaint alleges that Ozark breached its end of the bargain by not transferring its interest in the lease to Black Mountain, and by instead transferring that interest to Tap Rock. As Black Mountain's successor-in-interest, Marathon's complaint alleges that it is entitled to contract-based damages from Ozark's breach of the Ozark/Black Mountain assignment. Marathon also seeks punitive damages on the theory that Ozark defrauded Black Mountain and Marathon by taking Black Mountain's money, promising to transfer the lease, and then

> intentionally interfering with the agreement by refusing to properly notarize the Ozark-Black Mountain Assignment, improperly claiming that the Ozark-Black Mountain is invalid in an October 26, 2017 email to a Marathon representative, and finally, purporting to sell the same interest to a completely different party (Tap Rock) on November 22, 2017. Ozark has not even returned the funds it received from Black Mountain in the Lease. Ozark's acts are fraudulent, oppressive, and reckless with a wanton disregard for Marathon's rights in the Lease.

Pl.'s Compl., ¶ 50 at 8.

In its motion to dismiss Marathon's breach of contract claim, Ozark makes two main arguments. First, Ozark contends that it fully performed its sole obligation under the Ozark/Black Mountain assignment: to convey the lease to Black Mountain. As between it and Black Mountain, Ozark had no contractual obligation to fix the notary public's error. Since "Black Mountain never

possessed any such right to enforce against Ozark to begin with and, thus, had none to transfer to Marathon," Ozark argues that it could not breach a non-existent obligation. Ozark's Mot. to Dismiss at 5. Second, Ozark argues that, even if it had an obligation to fix the notary's error, Marathon is not Black Mountain's successor-in-interest. Rather, Marathon and Black Mountain made an independent contract for the mineral lease only. Marathon therefore did not take Black Mountain's right to enforce any underlying contractual obligations. In other words, Ozark argues that it is not in privity of contract with Marathon.

The Court first analyzes Ozark's privity of contract argument, since Marathon must allege that it has privity to have standing to even sue for breach of contract. Marathon argues that it can enforce the Ozark/Black Mountain conveyance because it is Black Mountain's successor-in-interest. "Privity of contract refers to a legal relation arising from right and obligation, or the legal relationship to the contract or its parties." *Tarin's, Inc. v. Tinley*, 2000-NMCA-048, 129 N.M. 185, 190, 3 P.3d 680, 685 (internal quotations omitted). "Ordinarily, the obligations arising out of a contract are due only to those with whom it was made; a contract cannot be enforced by a person who is not a party to it or in privity with it." *Id.* The party claiming that it is a successor-in-interest to a party on the contract must plead and prove that fact. *See Bank of New York v. Romero*, 2014-NMSC-007, ¶ 17, 320 P.3d 1, 6.

Marathon's complaint states that the transactions Ozark to Black Mountain and Black Mountain to Marathon were assignments. "An 'assignment' is a transfer of property or some other right from one person (the 'assignor') to another (the 'assignee')." *Quality Chiropractic, PC v. Farmers Ins. Co. of Arizona*, 2002-NMCA-080, ¶ 6, 132 N.M. 518, 521, 51 P.3d 1172, 1175. An assignment occurs where the lessee, transfers an entire interest in the lease therein without retaining any reversionary interests. *See May v. Walters*, 1960-NMSC-090, ¶ 13, 67 N.M. 297,

301–02, 354 P.2d 1114, 1117. "An assignment of the contract is both an assignment of the assignor's rights and a delegation of his duties." *Paperchase P'ship v. Bruckner*, 1985-NMSC-003, ¶ 7, 102 N.M. 221, 223, 693 P.2d 587, 589. At the pleading stage, the Court accepts as true Marathon's allegation that Black Mountain transferred to Marathon "its rights, title and interest in the" mineral lease obtained from Ozark and that Marathon is Black Mountain's successor-in-interest. Admittedly, Marathon's complaint is silent about the scope of the rights, title and interest it received from Black Mountain. However, at the pleading stage Marathon's complaint need only give "fair notice of what the … claim is and the grounds upon which it rests," without having to provide "detailed factual allegations." *Twombly*, 550 U.S. at 555. Marathon's complaint satisfies this standard. The complaint adequately alleges that Ozark failed to perform its obligation to transfer its interest in the leasehold to Black Mountain, as evident from its later purported transfer to Tap Rock.

The Court next addresses Ozark's contention that Marathon failed to adequately plead a cause of action for breach of contract. A contract is a legally enforceable promise consisting of an offer, an acceptance, consideration, and mutual assent. *See* NMRA, Civ. UJI 13-801. A person may breach a contract by failing to perform a contractual obligation when the performance is required. *See* NMRA, Civ. UJI 13–822. "Incomplete performance is a breach of contract." *Archuleta v. City of Roswell*, 898 F. Supp. 2d 1240, 1257–58 (D.N.M. 2012) (citing *Cochrell v. Hiatt,* 1981-NMCA-152, 97 N.M. 256, 258–59, 638 P.2d 1101, 1103-04). Marathon's complaint plausibly alleges the existence of a contract and Ozark's obligation under that contract. *See* Pl.'s Compl., ¶¶ 44, 50 (stating that "Black Mountain entered into a valid and binding contract … under which Ozark was to transfer [sic] interest in the Lease to Black Mountain," and that Ozark "promised to transfer an interest in the Lease in exchange for $280,000."). Instead, according to

the complaint, Ozark incompletely performed its obligation "by not transferring its interest in the Lease to Black Mountain, and instead transferring it later to Tap Rock through the Tap Rock Assignment." *See id.* at ¶ 48. Thus, Marathon's complaint has identified the specific obligation Ozark was to fulfill – transferring its interest in the lease to Black Mountain – and plausibly alleged that Ozark failed to complete that contractual obligation when it later conveyed the same interest to Tap Rock. The complaint, taken as true, also alleges that Marathon suffered damages because of Ozark's alleged breach of the contract. These allegations state a claim for breach of contract.

## V.  CONCLUSION

**IT IS THEREFORE ORDERED that** the pending motions are disposed of as follows:

1. Defendant Tap Rock Resources, LLC's Motion to Dismiss **[ECF No. 6]** is **GRANTED**;

2. Defendant Ozark Royalty Company, LLC's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) **[ECF No. 28]** is **DENIED**;

3. Plaintiff Marathon Oil Permian, LLC's Motion for Partial Summary Judgment on Quiet Title Claim **[ECF No. 21]** is **DENIED**.

**IT IS FURTHER ORDERED that** Plaintiff's claim asserted against Defendant Tap Rock Resources, LLC is hereby **DISMISSED**.

**IT IS SO ORDERED**.

_____
United States District Judge